UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELINDA A. CAMPBELL,

       Plaintiff,                                        Hon. Ellen S. Carmody

v.                                                       Case No. 4:05-CV-008

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On June 27, 2005, the parties consented to proceed before the undersigned for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred resolution of this matter to this Court. (Dkt. #15).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 32 years of age at the time of the ALJ's decision. (Tr. 16). She earned a General Educational Development (GED) diploma and worked previously as a website administrator, computer operator, salesperson, and adult care aide. (Tr. 16, 58, 71-77).

Plaintiff applied for benefits on August 21, 2002, alleging that she had been disabled since December 23, 2001, due to "mono," low blood sugar, underactive thyroid, obesity, acid reflux disease, low iron, ulcers, hernia, low blood pressure, digestive problems, and depression. (Tr. 36-38, 52, 225-27). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-35, 229-42). On March 17, 2004, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff, Plaintiff's mother, and vocational expert, Michelle Ross. (Tr. 248-73). In a written decision dated June 24, 2004, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 15-20). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 6-9). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

On October 20, 2002, Plaintiff's mother completed a questionnaire regarding Plaintiff's activities. (Tr. 65-70). According to her mother, Plaintiff sleeps 12-15 hours each night

and complains that she is tired. (Tr. 65). She also reported that Plaintiff has a "lot of close friends" with whom she regularly visits. (Tr. 65-66). She reported that Plaintiff gets along well in groups and "can carry on a conversation with everyone." (Tr. 66). She reported that Plaintiff plays games with her children, takes them camping and roller skating, and attends their sporting events. (Tr. 65, 68). According to her mother, Plaintiff drives, cooks, shops, cares for her children, plays cards, visits with relatives and neighbors, talks on the telephone, dines out, handles her finances, and cares for her personal needs. (Tr. 67-68).

Treatment notes from 2002[1] reveal that Plaintiff's depression and sleep difficulties were controlled with medication. (Tr. 147). Specifically, the examiner reported that "since being off the Zoloft [Plaintiff] has increased depression to the point that she is sleeping 14 [to] 16 hours a day." *Id.*

On December 20, 2002, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 139-42). Plaintiff reported that she was unable to work because "[o]nce a month, I totally sleep in, I sleep too much." (Tr. 139). She also reported that she was experiencing "swingy" moods. *Id.* Plaintiff reported that she sleeps 12-14 hours daily. (Tr. 140). She reported that she cooks, shops, performs "some chores" around the house, listens to music, watches television, and attends church. *Id.* The results of a mental status examination were unremarkable. (Tr. 141-42). The doctor diagnosed Plaintiff with an adjustment disorder with depressed mood. (Tr. 142). He rated Plaintiff's GAF score as 50.[2] *Id.*

---

[1] Because these particular records were copied improperly the precise date of this examination is unknown.

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

On February 2, 2003, Dr. Stephanie Heard, completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 125-38). Determining that Plaintiff suffered from an adjustment disorder with depressed mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 126-34). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 135). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. *Id.*

On April 10, 2003, Plaintiff participated in a sleep study, the results of which were "negative for obstructive sleep apnea." (Tr. 195). The doctor reported that while Plaintiff experiences severe hypersomnia, he "did not find any abnormality [in] the current sleep study that could explain it." With respect to whether Plaintiff may suffer from narcolepsy, the doctor reported that "it is very unusual to see such good quality sleep and not see any periodic limb movements in narcoleptic patients." *Id.*

On June 5, 2003, Plaintiff was examined by Dr. Mohammed Zafar. (Tr. 202-03). Plaintiff reported that she goes to bed at 8:00 p.m. and sleeps until 3:00 p.m. the following day. (Tr. 202). She also reported experiencing headaches. *Id.* The results of a physical examination were unremarkable. (Tr. 203). Dr. Zafar diagnosed Plaintiff with idiopathic hypersomnia. As for Plaintiff's complaints of headaches, the doctor reported that there was no evidence of any "focal or

5

lateralizing neurologic deficits." The doctor instructed Plaintiff to undergo an MRI and MRA examination of her brain. He also instructed Plaintiff to begin taking Provigil.[3]

On June 20, 2003, Plaintiff participated in an MRI examination of the brain, the results of which were "normal." (Tr. 191). Plaintiff also participated in an intracranial magnetic resonance angiography (MRA) examination, the results of which were "normal." (Tr. 190).

Treatment notes authored by Dr. Heather Plumer-Haun in 2003 reveal that Plaintiff's sleep problems were well controlled with medication. (Tr. 177). Plaintiff reported that since taking Provigil she has experienced a "significant improvement" and "feels like a new woman." *Id.*

Treatment notes dated December 4, 2003, reveal that Plaintiff was not taking her Provigil as prescribed. (Tr. 199). The doctor further noted, however, that Plaintiff's sleep difficulties were controlled when she took her medication as prescribed. *Id.*

Following a February 23, 2004 examination, Dr. Plumer-Haun reported that Plaintiff did not appear to be taking her Provigil as prescribed. (Tr. 219).

At the administrative hearing Plaintiff testified that she was not taking her Provigil regularly. (Tr. 258). She reported that she cooks and shops for groceries, but that her kids perform the chores around the house. (Tr. 260-61). Plaintiff reported that she can lift her coat, stand for one minute, sit for "a little bit longer," but cannot even walk down her driveway to get her mail. (Tr. 261-62).

---

[3] Provigil is "a medication to treat excessive sleepiness caused by certain sleep disorders." *See* http://www.provigil.com (last visited on January 6, 2006).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) depression and (2) a sleep disorder. (Tr. 17). The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that despite her limitations, Plaintiff was able to perform her past relevant work.

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

(Tr. 19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift 50 pounds occasionally and 25 pounds frequently, (2) she can stand, walk, and sit for six hours each during an 8-hour workday, (3) she can only occasionally climb ladders, scaffolds, ramps, or stairs, and (4) she must avoid concentrated exposure to fumes, odors, dust, gasses, or poor ventilation. (Tr. 19). After reviewing the relevant medical evidence, the Court finds that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. The vocational expert

testified that based on this RFC determination, Plaintiff was able to perform her past relevant work as a website administrator, computer operator, salesperson, and adult care aide. (Tr. 271). Accordingly, the ALJ concluded that Plaintiff was not disabled.

a. The ALJ Properly Assessed the Medical Evidence

On March 4, 2004, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. (Tr. 205-09). Plaintiff asserts that the ALJ failed to accord sufficient weight to the opinions expressed by Dr. King. Specifically, Plaintiff claims that Dr. King's opinion establishes that she is disabled.

The doctor reported that Plaintiff appeared depressed and anxious, but was "not taking any medications for depression or anxiety at this point." (Tr. 207-08). As part of this examination, Plaintiff participated in the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III), the results of which revealed that she possesses a verbal IQ of 68, a performance IQ of 68, and a full-scale IQ of 65. (Tr. 207). Dr. King concluded that Plaintiff "is an individual with very limited intellectual functioning abilities" and, therefore, "would have difficulty in engaging herself in much of any type of competitive employment other than that of the very simplest nature." (Tr. 208).

First, because Dr. King examined Plaintiff on only one occasion his opinion is entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Sec'y of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989). Moreover, Dr. King did not conclude that Plaintiff was disabled, but instead observed that Plaintiff would experience "difficulty" performing work that was not simple in nature. This conclusion must be considered, however, in light of the observation that Plaintiff was not taking any medication to treat her depression and

9

anxiety. As the ALJ correctly observed, Plaintiff "seems stable when she is medicinally compliant." (Tr. 18). Dr. King's opinion is further belied by Plaintiff's work history.

The ALJ properly relied on the opinions and findings of Plaintiff's treating physicians, none of whom expressed the opinion that Plaintiff is impaired to an extent beyond that recognized by the ALJ. In sum, the ALJ properly accorded little weight to Dr. King's opinions as such are contradicted by significant medical evidence.

> b. Plaintiff does not meet the requirements of section 12.05 of the Listing of Impairments

Plaintiff asserts that she satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The ALJ disagreed, concluding that Plaintiff's impairments did not meet the requirements of this (or any other) listing. (Tr. 17). While the record reveals that Plaintiff may possess less than average intellectual abilities, she has failed to establish that she satisfies all the requirements of this particular provision.

> Section 12.05 of the Listing provides, in relevant part, the following:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

>    OR
>
>    B. A valid verbal, performance, or full scale IQ of 59 or less;
>
>    OR
>
>    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
>    OR
>
>    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>       1. Marked restriction of activities of daily living; or
>
>       2. Marked difficulties in maintaining social functioning; or
>
>       3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
>       4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05.

Specifically, Plaintiff asserts that she satisfies section 12.05(C). As noted above, Plaintiff's performance on the Wechsler Adult Intelligence Scale revealed that she possesses a verbal IQ of 68, a performance IQ of 68, and a full-scale IQ of 65. That this test was not administered until well after Plaintiff attained the age of 22 is of no consequence. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (in analyzing a claim under section 12.05, the court concluded that

"absent evidence of sudden trauma that can cause retardation," IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life). Moreover, while Plaintiff has exaggerated the impact of her physical impairments, she certainly suffers from a physical impairment which imposes additional and significant work-related limitations.

While Plaintiff satisfies the criteria articulated in subsection (C), she must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets" section 12.05) (emphasis added). Specifically, Plaintiff must establish that she experienced deficits in adaptive behavior prior to the age of 22. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that she experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The record fails to support the conclusion that Plaintiff experienced deficiencies in adaptive behavior prior to the age of 22. Moreover, Plaintiff's reported activities and work history fail to support such a conclusion. In sum, the record fails to establish that Plaintiff experienced deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm'r of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant with a 10th grade education, who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his

adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment); *see also*, *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior").

As articulated herein, therefore, the Court concludes that Plaintiff has not presented evidence from which it can reasonably be determined that she has experienced deficiencies in adaptive behavior. Thus, Plaintiff has not met her burden in establishing that she satisfies the requirements of section 12.05 of the Listing of Impairments. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002) (the burden rests with the claimant to establish that she meets a listed impairment).

c. The ALJ properly evaluated Plaintiff's subjective complaints

The ALJ concluded that Plaintiff's subjective allegations of pain and limitation were "not credible in light of the record as a whole." (Tr. 19). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a

claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ correctly observed, none of Plaintiff's treating physicians have expressed the opinion that Plaintiff is impaired to an extent beyond that recognized by the ALJ's RFC determination. (Tr. 18). The ALJ also correctly noted that Plaintiff "seems stable when she is medicinally compliant." *Id.* Furthermore, neither Plaintiff's reported activities nor the objective medical evidence supports her subjective allegations of disabling pain and limitation. In sum, there exists substantial evidence to support the ALJ's credibility determination.

d. The ALJ Properly Evaluated the Medical Evidence

Plaintiff claims that the ALJ failed to properly evaluate the medical evidence. Specifically, she asserts that "the ALJ erred in finding that absent a firm medical conclusion as to the underlying cause of the hypersomnia the claimant did not meet the requirements for disability."

The ALJ made no such finding. As the ALJ correctly concluded there exists no medical evidence supporting the conclusion that Plaintiff suffers from *narcolepsy*. The ALJ did recognize, however, that Plaintiff suffers from a sleep disorder. The ALJ's conclusion that this impairment was less than disabling in severity was not based on the absence of a medical diagnosis regarding its underlying cause. Instead, the ALJ's determination was based on the medical evidence, including the evidence showing that Plaintiff's sleep disorder was controlled with medication.

e.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether Plaintiff, in light of her RFC, could perform her past relevant work, to which the vocational expert indicated that she could. As there was nothing improper or incomplete about the hypothetical question he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date:  March 8, 2006                             /s/  Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge